UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES S. PARS,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, *et al.*,<br><br>Defendants. | Case No. 1:16-cv-02491 (TNM) |

## MEMORANDUM OPINION

Plaintiff James Pars,[1] an employee of defendant Central Intelligence Agency ("CIA" or the "Agency"), seeks a declaratory judgment and order requiring the Agency to complete its investigation into his reprisal complaint, which has been pending for nearly three years. Compl. ¶¶ 3, 42, 56. He alleges that Presidential Policy Directive 19 ("PPD-19" or the "Directive"), issued by President Obama in October 2012, requires that the CIA Inspector General ("IG") conduct an investigation into his complaint, and that the office's failure to do so can be rectified through the Administrative Procedure Act ("APA"). *Id.* ¶¶ 37, 51-56. The Agency has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss, ECF No. 12. Upon consideration of the pleadings, relevant law, and related legal memoranda in opposition and in support,[2] I find that the complaint fails to allege that a private right of action is established, either by statute or the Directive, to sustain judicial review of the

---

[1] For national security purposes, the Plaintiff is proceeding under an alias. Mem. and Order, Dec. 20, 2016, ECF No. 2.

[2] Subject matter jurisdiction is proper under 28 U.S.C. § 1331, and the Defendant has not challenged litigating in this District. *See* Def.'s Mot. to Dismiss; *see also* 28 U.S.C. § 1391.

merits of this action. Accordingly, the Defendant's motion will be granted, and the complaint will be dismissed without prejudice.

I.  **Background**

Mr. Pars is a 16-year veteran of the CIA. Compl. ¶ 3. In December 2014, he began a one-year assignment as the Deputy Chief of Base, a management position, at a base located in a conflict zone. *Id.* ¶¶ 6, 8. In this position, he allegedly observed certain "unusual and inappropriate" behaviors of the Chief of Base ("COB") which he feared "negatively impacted the Base's ability to meet its mission of assisting Intelligence Community (IC) and US military partners, and endangered the lives of personnel." *Id.* ¶¶ 8-9. For example, the COB allegedly often spent time cooking, baking, socializing, entertaining, exercising, and shopping, and insisted on traveling in areas of indirect fire attack to perform certain of these activities, putting herself and other military personnel in danger. *Id.* ¶¶ 10-12. In one instance, the COB and her personnel allegedly traveled through an area that was hit by a rocket ten minutes later. *Id.* ¶ 12. In another instance, the COB allegedly missed a meeting with a senior U.S. military official in order to cook. *Id.* ¶ 25. The COB also allegedly told Mr. Pars that she was "horribly depressed" and missed her family. *Id.* ¶ 10. According to Mr. Pars, she selected certain individuals to become her "adopted sons," and gave preferential treatment to those individuals, entertaining them and permitting them to shirk their work responsibilities. *Id.* ¶¶ 13-18.

In or around January 2015, upon advice from the base's Psychological Officer, Mr. Pars disclosed his concerns to the "Chief," the next person in the chain of command. *Id.* ¶¶ 21-22. The Chief allegedly relayed Mr. Pars' disclosure to the COB, who allegedly retaliated against Mr. Pars by excluding him from key meetings, micromanaging his work, and exhibiting "belligerent and threatening behavior" towards him. *Id.* ¶¶ 23, 27. In March 2015, while on

previously scheduled leave for rest and recuperation, Mr. Pars was told that he would not be returning to the base. *Id.* ¶ 32. He alleges that the COB sent a "short of tour cable" stating that she had lost confidence in Mr. Pars' leadership. *Id.* ¶ 33. Mr. Pars alleges that the sole reason he was "sent home short of tour was because he complained about the COB's behavior and mismanagement of personnel and resources," and that this very negative career event that has severely impacted his career at the CIA. *Id.* ¶¶ 34, 36.

In April 2015, Mr. Pars submitted a complaint to the CIA IG, alleging improper retaliation due to his protected disclosures about the COB. *Id.* ¶ 42. Between April and December 2015, Mr. Pars met twice with the CIA IG's office about his complaint, and submitted evidentiary and witness information to the IG. *Id.* ¶¶ 43-45. Since then, however, Mr. Pars alleges that the IG has not taken any action on his complaint, including interviewing main witnesses and issuing a final written disposition. *Id.* ¶¶ 46-48. Mr. Pars challenges this inaction as a violation of PPD-19 and seeks that I order the Agency to conclude its investigation and issue a written disposition. *Id.* ¶ 56.

## II.   Legal Standard

A party may move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). In addition, "[i]n determining whether a complaint fails to state a claim, [the court] may consider

3

only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## III. Analysis

Presidential Policy Directive 19, signed on October 10, 2012 by President Obama, seeks to "ensure[] that employees [] serving in the Intelligence Community . . . can effectively report waste, fraud, and abuse while protecting classified national security information" and "prohibits retaliation against employees for reporting waste, fraud, and abuse." Def.'s Mot. to Dismiss Ex. 1 ("PPD-19") at 1, 8. In the Directive, President Obama ordered that intelligence agencies such as the CIA establish a process for employees to seek review of any personnel action allegedly made as a reprisal for a protected disclosure. *Id.* at 2, 6. The Directive requires the agency's Inspector General to investigate and determine whether a personnel action complained of violated the Directive and, if so, to recommend appropriate corrective action including but not limited to reinstatement, reassignment, and the award of back pay, related benefits, expenses, and/or costs. *Id.* at 2. Employees who have exhausted this process can seek further external review by a three-member Inspector General panel. *Id.* at 4. Mr. Pars alleges that the CIA IG's failure to investigate and issue a final written disposition regarding his complaint constitutes "agency action unlawfully withheld or unreasonably delayed," and that this inaction prevents him from being able to seek external review. Compl. ¶¶ 51-56; *see also* 5 U.S.C. § 706(1).[3]

---

[3] While Mr. Pars' complaint alleges that the Agency failed to act pursuant to both PPD-19 and the IC IG External Review Procedures, he seeks relief only as related to the CIA IG's alleged failure to investigate his complaint. *See* Compl. ¶¶ 52-56. To the extent that Mr. Pars' claim alleges a violation of the IC IG External Review Procedures, this must be dismissed for failure to

4

Although the APA requires courts to compel agencies to act where the action is "unlawfully withheld or unreasonably delayed," the complaint does not adequately establish that the CIA's investigation into the Plaintiff's reprisal complaint was legally required, nor does it allege that a private right of action exists to permit judicial review. As an initial matter, "the only agency action that can be compelled under the APA is action legally *required*," *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004), and "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Furthermore, as it pertains to executive orders, those "executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits." *In re Surface Mining Regulation Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980).[4]

The complaint does not sufficiently allege that the CIA IG's action is legally required such that it can be compelled by the judiciary. Significantly, the complaint fails to identify any statute that makes PPD-19 have the force and effect of law—in other words, that the President issued PPD-19 pursuant to an authorization by Congress. Furthermore, the Plaintiff admits that "PPD-19 does not provide whistleblowers with a private right of action to enforce their rights." Pl.'s Opp. to Def.'s Mot. to Dismiss 2. These shortcomings require that the complaint be dismissed for failure to state a claim.

---

state a claim. As Mr. Pars recognizes, the CIA IG has not yet issued a final written disposition on his complaint, and therefore, he has not met the exhaustion requirement for external review. *See* Compl. ¶ 55; PPD-19 at 4.

[4] Though the order in this case is a Presidential Policy Directive, and not an Executive Order, Mr. Pars alleges, and the Defendant does not contest, that it is the substance of the document that is controlling. *See* Legal Effectiveness of a Presidential Directive, as Compared to an Executive Order, 24 Op. O.L.C. 29 (2000), ECF No. 14-1; Mem. of P. & A. in Reply to Pl.'s Opp. to Def.'s Mot. to Dismiss 3.

Although the Plaintiff argues that PPD-19 was later entirely codified in the Section 601 of the Intelligence Authorization Act for FY 2014, the statute does not authorize a private right of action by which I can adjudicate Mr. Pars' claim. *See id.*; 50 U.S.C. §§ 3234(b)-(c). The statute only codifies the prohibition on reprisals for disclosing information regarding mismanagement and abuses of authority to, *inter alia*, the inspector general for the employee's agency, and requires that the "President shall provide for the enforcement of this section." 50 U.S.C. §§ 3234(b)-(c). The statute is silent as to how the President should enforce the prohibition, and says nothing to permit or otherwise provide for judicial review. *See id.* Even assuming that PPD-19, which pre-dated Section 601, is a directive detailing the President's enforcement of Section 601, the Plaintiff's own admission that PPD-19 does not create a private right of action precludes judicial review of his claim. *See Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 ("An Executive Order . . . which does not create any private rights-is not, for instance, subject to judicial review.").

The Plaintiff's fatal admission that PPD-19 does not create a private right of action echoes PPD-19 itself, which includes a clear disclaimer: "This directive is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Similar language has been found to not create any private right of action. For example, in *Meyer v. Bush*, the D.C. Circuit described an Executive Order issued by President Reagan stating that it was "not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States" as one that "created no private rights." 981 F.2d at 1290, 1296 n.8. Thus, a private right of action is neither created through the Directive nor Section 601, and Mr. Pars' claim, no matter how meritorious, cannot

proceed under the circumstances as alleged. "Without [a private remedy derived from Congressional authority], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. 275, at 286–87.

## IV. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss will be granted. A separate order will issue.

Dated: February 28, 2018

TREVOR N. MCFADDEN
United States District Judge

7